Good morning. I'm Carl Gerber for the Appellant. The briefs are extensive, so I want to limit my time to rebuttal and an overview on this. There are a couple themes going on in this appeal. One of them is whether the plaintiff should have been given leave to amend. There is significant authority cited in the brief that we should have been given leave to amend. The fraud wasn't pled correctly. We had depositions about a month before the summary judgment hearing in which we finally figured out how the plaintiff had been defrauded. It involved Beth Evans, who was the daughter of the other lady in this case. So that's one issue. The next issue is whether the whole case should be falling if fraud isn't pled right or if for some reason we don't have a contract. The answer is no, the whole case doesn't fall. Wrongful termination is a state law claim. It is based upon a different pleading standard than fraud, and there doesn't have to actually be real fraud in order to go forward with wrongful termination. It could be based upon the business and professions code violations, even if we don't have a business and professions code claim. So there were emails. We cited them in our brief, and those emails were pretty much complaining about being set up and hoodwinked and defrauded, and those were sent right before the plaintiff was terminated. So she should have been able to go forward on wrongful termination. And we had pled some other contract theories, quantum merit, which does not require an actual contract, so those should not have been dismissed. So I reserve the remaining time for any follow-up questions that the justices have. Thank you, counsel. All right, I will be seated. Good morning, your honors. May it please the court. Stephen Kroll on behalf of defendants and appellees, Nail Teaks Cosmetic Corporation, and Diane Hammond. This is a case that arises, obviously, from a granting of a motion for summary judgment, and the court, the district court ruled properly. There is no genuine issue of material fact that existed on any of the appealed claims. It's important to note at the onset that there were ten causes of action in the complaint, and only seven of those were appealed, whereas three were not. The three that were not appealed were a violation of Labor Code Section 203 for unpaid wages, the seventh cause of action for misappropriation of trade secrets under the Uniform Trade Secret Act, and the tenth cause of action for violation of Business and Professions Code 17-200. And the reason why this is important is because the entire underlying theory of plaintiff's complaint against the defendants all rested on either in whole or in part on these claims, which were either, one, not appealed, which was the Business and Professions Code claim, or number two, were already adjudicated by the district court and has not been appealed by the plaintiff in this matter, meaning the Labor Code Section 203 claim and the misappropriation of trade secret claim. One of the things that I find very telling, which is consistent with the briefs, which is consistent here with the oral argument, is this is plaintiff's appeal, and plaintiff is here today in order to establish where there are a dispute in the facts. And the fact that there hasn't been any pointed out in the briefs, let alone in the argument here today, the plaintiff hasn't, the appellant hasn't met its burden at this point on the appeal. Nonetheless, the facts of the case are clear in the sense of it's the defendant's position that this matter starts and ends with the breach of contract claims. And it's clear, based on the information and the negotiations which are well established in the undisputed facts of the case, is that the parties never had a mutual consent to the terms of the employment agreement. And that is clear based on the outward manifestations by the parties, and in particular, by Ms. Lewis herself. Now, with regard to that information, it's clear that in this case, Ms. Lewis was the one who initiated the negotiations regarding the first email with a proposed employment agreement on March 7, 2008. That's undisputed. And thereafter, the parties engaged in a series of exchanges of emails with regard to what the terms should or should not be in the agreement. Finally, on March 11 of 2008, my clients, Nailteeks, sent a detailed employment contract to the plaintiff as their proposed version of what the terms of that agreement would be. Several of those terms were all disagreed upon by the plaintiff herself. She disputed them, and she wanted alternate terms included. The parties were unable to come to any agreement with regard to the terms. And finally, or what happened in the interim was, Ms. Lewis herself had accidentally faxed the draft employment agreement to her current employer at the time, and she was subsequently fired on March 14 because of the error that she had made. After that, the parties still continued to negotiate what the terms of the agreement would be. And finally, because they couldn't come to a mutual understanding of what those specific terms would be, on April 2, 2008, Ms. Lewis herself stated in an email to my clients, quote, for now, let's base my salary on a straight $170,000, and I will pay my car, medical, and long-term disability at this end until we can finalize this contract when I come back there shortly. That was a statement by Ms. Lewis herself. Was Lewis paid pursuant to that agreement? Yes, she was, Your Honor. And so was that for a period of three months? It was approximately five months, Your Honor. Five months. From April of 2008 until her termination in September of 2008. So the information is clear in that regard. Simply, there were several terms in particular that the parties could not agree upon. One of the terms was a termination for convenience. My client wished to have the ability to terminate her employment for convenience with the payment of a $15,000 separation fee. Ms. Lewis specifically would not agree to that. Number two, there were two terms that Ms. Lewis wanted in the agreement that my client steadfastly would not agree to. One was having a bonus structure based on sales stated in the agreement. My client would not agree to that. And the second provision that Ms. Lewis wanted that my client wouldn't agree to was that she wanted a provision in the employment agreement stating that what her status of employment would be with the company if it were to be sold. And my client would not agree to that either. And so basically what happened is exactly what is stated in Ms. Lewis's clear and unequivocal email is that I will be paid a straight salary and hopefully later on we can figure out the terms of the agreement. And I think based on that, this whole case rises and falls with regard to these undisputed emails with regard to the commencement of the employment. The opposing counsel said they finally realized that their claim was really for fraud. And as I understand their theory of fraud is that Ms. Lewis was told that the daughter had quit for pregnancy and that she was going to basically replace her and do her job and that over a three year period that the company was going to develop, be sold, and there would be a large amount and everybody would benefit. Her theory, as I understand it, is that it wasn't true that she was really going to be there on any semi-permanent basis or that she was only being hired to hold the fort until the daughter came back. But that's the theory of fraud as I understand it. And she says that you can infer from the facts that are alleged that she started when the daughter came back, she was then fired, that she was induced to believe that there was a job that really didn't exist. Is that the theory you understand? I believe that is the general gist of the theory that the plaintiffs are now alleging. I believe there are several problems with that. Well, there are several problems with the underlying fraud claim per se. And then there is also a few problems with this new theory that they allege. I can address each of those in order. With regard to the actual fraud claim itself, if we're simply discussing this allegation that she was told that the daughter would not be coming back, that is not a representation of a past or existing fact. With regard to a fraud claim, fraud must be specific. Well, one pled, which is the next one I'm going to get to. But with regard to stating facts for fraud, it must be a past or existing fact. The allegation that when she was applying for employment with my client that she was informed that the daughter may or may not be coming back after her pregnancy is a speculation. It's an opinion of a future event. It's not something that can be, quote, misrepresented as a past or existing fact. In addition to that, Ms. Lewis knew exactly what the terms were when she ended up coming to work for us, which was what I just spoke a minute ago about. And in addition to that, it's very clear that under Rule 9 that fraud must be pled with specificity in the complaint. And the fact of the matter is, is that in the complaint, the only issues or allegations of fraud that were being pled was that she understood that she was being offered a three-year employment agreement, and that was it. And this new allegation that was raised by the plaintiff on a motion for summary judgment was not pled in the complaint. There was no notice given of that allegation to the defendants. And it's well established that a motion for summary judgment is not the second chance for the plaintiff to hash out some alternate theories of fraud which were not pled with specificity in the complaint. Notwithstanding that, even if you accept the facts as they are alleged by the plaintiff, which the district court addressed, it's not sufficient to establish fraud.  They never did ask to amend the complaint any time prior to the motion for summary judgment. I will state that in the record, it is clear that the plaintiffs were extremely dilatory in conducting their discovery in this lawsuit. I recall back in August of 2009, the plaintiffs had moved for a continuance of the trial, as well as the discovery cutoff, and the court summarily denied it and said that there was no good cause for continuing any of the dates, and that it appeared that the plaintiffs were dilatory in pursuing the discovery in the case. And that is accurate. This case was pending, I think it was almost a year before the plaintiffs ever noticed even one deposition in this case. I think some of your arguments may be persuasive. Others I don't really understand. You say it wouldn't be fraud? If the company knew that there was not going to be a job for more than three or four months, and led the person to believe that it was an available job, that would not be fraudulent? Yeah, let me clarify what the position is on that. The general allegation by the plaintiff was that she was informed that there would be this position for her, and actually specifically that is listed in their complaint, is that whether the daughter of the owner, Diane Hammond, the daughter is Beth Evans, whether or not she would come back to the company after she had her baby, that had nothing to do with whether or not the plaintiff was going to have a job with the company. The job that the plaintiff was taking was a vice president of marketing and sales. The daughter was the vice president of the company. She had a completely separate and distinct role from what the plaintiff was coming in to work as. Now, in addition to that, it's inaccurate, based on the undisputed facts in the record, for the plaintiff to say that she was somehow terminated just after the daughter came back to work, which is completely inaccurate based on the facts. The daughter came back in or about July of 2008, and the plaintiff was eventually terminated in September. So the facts in the undisputed record do not add up. And in addition to that, the fact that there was a thought by the president of the company that the daughter may or may not come back after her pregnancy is not a past or existing fact. It's not like saying it's simply a belief on what she thinks may occur, but nonetheless it had no bearing whether or not the plaintiff would have a position with the company at that time or not. There was never any statement in the record by the plaintiff that if, in fact, the daughter came back, that she would be fired. That's nowhere in the record, because her position was for vice president of marketing and sales and was completely distinct from the daughter's position, which was a vice president. I really wasn't questioning about the facts. I was just questioning your theory that it's got to be an existing fact or a past fact, and that therefore there couldn't be fraud if all of that were true. But if certainly if there were an agreement, if the company had made a determination that she would only be hired until the daughter got back, that it would be fraud. That factual allegation is nowhere in the record. Okay. All right. Thank you. One gets wrongful termination by complaining about something that is suspicious. Under Collier and a lot of California cases, they don't have to prove that what they're complaining about actually violates a statute, merely that they have reasonable suspicions. Here we have, and this is page 7 through 9 of the appellant's brief, opening brief, we have an August 14th and August 20th and August 27th letter in which the plaintiff is letting Ms. Hamon know that she has found out, she's taken a 180 degree, and what was promised to her has not been given. She's complaining of deceitful and fraudulent conduct. She's fired a week or two later at the most. So there's a nexus between those emails, complaining of something that's suspicious and illegal, and the termination. That's all you need for wrongful termination. You don't have to plead an exact pattern of fraud for your wrongful termination claim. Now, the plaintiff was set up. This is a classic fraud case. These are not mere opinions. They're things which are determined to be fairly outlandish once discovery started. And keep in mind, this case was filed November 21st. It was summarily adjudicated ten months later. We weren't dilatory. It was removed to federal court. We didn't file in federal court, so it wasn't in federal court on November 21st. We couldn't get discovery going until we got a Rule 26 meeting. We had very little time to do discovery in this case. And the people involved, like Ms. Hamoud, were in Florida, and so was Beth Evans. So this was not people we could depose around the corner. But at any rate, she was set up. She was told outlandish facts that graduate to being far more than opinions. And we cite a law about when opinions do become actionable. And if the speaker knows the person is relying upon that, they have superior knowledge of it, they're giving half-truths, it becomes actionable. And there's a lot of stuff that Planoff is told. And the reason why the contract never goes down and there's a tribal issue on that is because Planoff is told she doesn't need a contract. Don't worry about the details. These are all classic indications of fraud going on. And so we have, after Planoff actually gets there, is when Ms. Hamoud starts telling her, we're not going to give you. And these are the terms someone would naturally want if they're leaving a job. And so that's very material in this also. And a major misrepresentation is the ability of this company. This company had literally no ability. It was a very odd business between a mother and a daughter, and it didn't merit $170,000 a year of vice president. It didn't merit this executive team Planoff brought on. And this was just something that misrepresented the Planoffs. This is a company that's going to be sold for $100 million. We had a motion out, which was never granted, to be able to compel and find out what the gross of this company was. Because if it wasn't even $2 million or $5 million, it's just not credible that it would have been sold for $100 million in three years. These are the kind of misrepresentations made to the Planoffs. Other thing is, we pled a pattern of fraud. There is law about whether you have to plead every little part of an elaborate pattern of fraud. Part of this issue with Beth Evans and the fact that everyone knows she's coming back but Planoff. And that's the testimony we got. So there's no opinion there. Everyone knew Beth Evans was coming back but Planoff. That is part and parcel of what was alleged. Planoff was being asked to come on for some sort of a long-term thing to get this business in shape, to sell it in three years for lots of money. And she's going to get something out of it when it's sold. Now, defendant has also claimed, well, Planoff hasn't suffered any damage because she didn't have a job. Well, there is a damage called emotional distress. And even if Planoff had no job, which isn't true, she still suffered that type of damage. Planoff got fired because she was getting employment with defendants. So the employment interrupted it. And these opinions we've heard about, again, more in case law, if opinions are material to the transaction, they constitute fraud. They're not just opinions that don't matter. Everything that defendant claims as an opinion, we claim as a representation, really was very material to the transaction. And that's all that appellant would say at this point. Thank you. Thank you, counsel. Case just argued is submitted. Final case of the morning.
judges: Fletcher B. , Reinhardt, Wardlaw